1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   WONDIYRAD KABEDE,                          No.  2:16-cv-1765 DB P

12                 Plaintiff,

13         v.                                    ORDER AND FINDINGS AND
                                                 RECOMMENDATIONS
14   GARY BROWN, et al.,

15                 Defendants.

16

17          Plaintiff is a state prisoner proceeding pro se.  Plaintiff seeks relief pursuant to 42 U.S.C.

18   § 1983 and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.  This

19   proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

20   Before the court are plaintiff's motion to proceed in forma pauperis, the screening of plaintiff's

21   complaint, plaintiff's request for the appointment of counsel, plaintiff's motion for a physical and

22   mental examination, and plaintiff's motion for the court to review documents.  Each is addressed

23   below.

24                                   **IN FORMA PAUPERIS**

25          Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. §

26   1915(a).  Accordingly, the request to proceed in forma pauperis will be granted.

27          Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28 U.S.C. §§

28   1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee in

                                                  1

1 accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct

2 the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and

3 forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated for monthly payments

4 of twenty percent of the preceding month's income credited to plaintiff's prison trust account.

5 These payments will be forwarded by the appropriate agency to the Clerk of the Court each time

6 the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. §

7 1915(b)(2).

8 **SCREENING**

9 **I.**  **Legal Standards**

10   The court is required to screen complaints brought by prisoners seeking relief against a

11 governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

12 court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

13 "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

14 monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

15   A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

16 Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

17 Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

18 indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

19 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

20 pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

21 Cir. 1989); Franklin, 745 F.2d at 1227.

22   A complaint, or portion thereof, should only be dismissed for failure to state a claim upon

23 which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in

24 support of the claim or claims that would entitle him to relief.  Hishon v. King & Spalding, 467

25 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt

26 Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a complaint under

27 this standard, the court must accept as true the allegations of the complaint in question, Hosp.

28 Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light

2

1  most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, <u>Jenkins v.</u>

2  <u>McKeithen</u>, 395 U.S. 411, 421 (1969).

3      **II.      Allegations in Plaintiff's Complaint**

4      In the caption, plaintiff lists the defendants as "Governor Gary Brown," "Mrs. Kamala Harris

5  - Attorney General," "California Parole Board," "Dr. Barnett – Sacramento Medical

6  Headquarters," and "Detainer Warden."  However, on the following page under the heading

7  "Defendants," he lists the following personnel at Mule Creek State Prison: "Dr. S. Heatley," the

8  "Chief Medical Officer;" "Dr. James Jackson," the "Assistant C.M.O.;" "Dr. Sam Wong," the

9  "'A' Facility Clinic Doctor;" and "Mr. Jerry Dowdy," the "Prison Mail Room Supervisor."

10      Plaintiff's complaint is difficult to decipher.  It appears plaintiff is alleging the following.  His

11  first claim is labelled a medical claim.  Plaintiff states that he was implanted with a "bio-technical

12  implant" which caused him heart failure.  However, plaintiff also states that he refused to have

13  the surgery to put in the implant.  Plaintiff states that he is in pain and can barely walk.

14      Plaintiff's second claim is labelled a "mail" and "threat to safety" claim.[1]  He states that his

15  pain makes it impossible for him to communicate with the outside world.  His requests for

16  assistance in calling his immediate family have been denied.  Also, his legal mail was not sent

17  out.  He further states that his food and medication are contaminated with a flu virus.  Finally, he

18  contends his administrative appeal has been held up due to its complexity.

19      Plaintiff's third claim is labelled as addressing disciplinary proceedings, threat to safety, and

20  retaliation.  Therein, plaintiff states that he filed a 2015 action in this court to stop prison officials

21  from harassing him with false disciplinary rules violations.  He claims that based on the grievance

22  he filed, which is addressed in claim 2 in this case, he again was cited for a false disciplinary rules

23  violation.  Plaintiff concludes by stating that "they" are trying to get him raped.

24      In his request for relief, plaintiff asks for the appointment of counsel, for the prison to give

25  him appropriate medical treatment, and for the court to order an investigation into what was

26  "done to [his] body."

27

28  [1] This court's complaint form that plaintiff used requires that plaintiff's check only one subject matter for each claim.  For several of his claims, plaintiff checked more than one subject.

1        **III.     Analysis**

2               The court finds the allegations in plaintiff's complaint so vague and conclusory that it is

3        unable to determine whether the current action is frivolous or fails to state a claim for relief.  The

4        court has determined that the complaint does not contain a short and plain statement as required

5        by Fed. R. Civ. P. 8(a)(2).  Although the Federal Rules adopt a flexible pleading policy, a

6        complaint must give fair notice and state the elements of the claim plainly and succinctly.  Jones

7        v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).  Plaintiff fails to identify what each

8        defendant has done, or not done.  Plaintiff must allege with at least some degree of particularity

9        overt acts which defendants engaged in that support plaintiff's claim.  Id.  Because plaintiff has

10       failed to comply with the requirements of Fed. R. Civ. P. 8(a)(2), the complaint must be

11       dismissed.  The court will, however, grant leave to file an amended complaint.

12              If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions

13       complained of have resulted in a deprivation of his constitutional rights.  See Ellis v. Cassidy, 625

14       F.2d 227 (9th Cir. 1980).  Also, the complaint must allege in specific terms how each named

15       defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some

16       affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo

17       v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v.

18       Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

19              Furthermore, supervisory personnel are generally not liable under § 1983 for the actions

20       of their employees under a theory of respondeat superior and, therefore, when a named defendant

21       holds a supervisorial position, the causal link between him and the claimed constitutional

22       violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979);

23       Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations of

24       official participation in civil rights violations are not sufficient.  Ivey v. Bd. of Regents, 673 F.2d

25       266, 268 (9th Cir. 1982).

26              In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to

27       make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended

28       complaint be complete in itself without reference to any prior pleading.  This is because, as a

4

1   general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375

2   F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no

3   longer serves any function in the case.  Therefore, in an amended complaint, as in an original

4   complaint, each claim and the involvement of each defendant must be sufficiently alleged.

5        Plaintiff appears to be attempting to allege the following claims:  (1) an Eighth

6   Amendment claim based on his medical care; (2) an Eighth Amendment claim based on threats to

7   his health and safety; (3) a claim for retaliation based on the exercise of his First Amendment

8   rights; and (4) a First Amendment claim regarding the handling of his legal mail.  Below, the

9   court sets out the legal standards for each of these claims.  If plaintiff chooses to amend his

10  complaint, he must make specific allegations about what each defendant did, or did not do, that

11  resulted in a constitutional violation by setting out the elements of each legal claim.

12       **A.  Eighth Amendment Medical Claim**

13       In order to state a claim under the Eighth Amendment regarding medical care, plaintiff

14  must allege and prove that he suffered a sufficiently serious deprivation (the objective prong of

15  the claim) and that officials acted with deliberate indifference in allowing or causing the

16  deprivation to occur (the subjective prong of the claim).  Wilson v. Seiter, 501 U.S. 294, 298-99

17  (1991).  Thus, when a prisoner's Eighth Amendment claim arises in the context of medical care,

18  the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate

19  indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A viable

20  Eighth Amendment medical claim, then, states two elements: "the seriousness of the prisoner's

21  medical need and the nature of the defendant's response to that need."  McGuckin v. Smith, 974

22  F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104

23  F.3d 1133 (9th Cir. 1997) (en banc).

24       A medical need is serious "if the failure to treat the prisoner's condition could result in

25  further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin, 974

26  F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical need include

27  "the presence of a medical condition that significantly affects an individual's daily activities."  Id.

28  at 1059-60.  By establishing the existence of a serious medical need, a prisoner satisfies the

objective requirement for proving an Eighth Amendment violation.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to it with deliberate indifference.  <u>Farmer</u>, 511 U.S. at 834.  In general, a prisoner may show deliberate indifference with evidence that officials denied, delayed, or intentionally interfered with medical treatment, or he may show it by the way in which prison officials actively provided medical care.  <u>Hutchinson v. United States</u>, 838 F.2d 390, 393-94 (9th Cir. 1988).  Before it can be said that a prisoner's civil rights were violated by inadequate medical care, however, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."  <u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458, 460 (9th Cir. 1980) (citing <u>Estelle</u>, 429 U.S. at 105-06).  <u>See also</u> <u>Toguchi v. Soon Hwang Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.");  <u>McGuckin</u>, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"  <u>Farmer</u>, 511 U.S. at 835 (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986)).

## B.  Eighth Amendment Claim of Threats to Health and Safety

Stating a claim under the Eighth Amendment regarding health and safety similarly requires plaintiff to show he suffered a sufficiently serious deprivation and that officials acted with deliberate indifference in allowing or causing the deprivation to occur.  It is well established that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners."  <u>Farmer</u>, 511 U.S. at 833.  "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offense against society.'"  <u>Id.</u> at 834.  However, prison officials do not incur constitutional liability for every injury suffered by a prisoner at the hands of another prisoner.  <u>Id.</u>  Plaintiff must show a prison official had a "sufficiently culpable state of mind," one of deliberate indifference to the inmate's health or safety.  <u>Id.</u>

////

C. **First Amendment Retaliation Claim**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted).

Under the first element, plaintiff need not prove that the alleged retaliatory action, in itself, violated a constitutional right. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (to prevail on a retaliation claim, plaintiff need not "establish an independent constitutional interest" was violated); see also Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) ("[P]risoners may still base retaliation claims on harms that would not raise due process concerns."); Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985) (transfer of prisoner to a different prison constituted adverse action for purposes of retaliation claim). The interest cognizable in a retaliation claim is the right to be free of conditions that would not have been imposed but for the alleged retaliatory motive. However, not every allegedly adverse action is sufficient to support a claim for retaliation under § 1983. Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (harm must be "more than minimal"); see also Bell v. Johnson, 308 F.3d 594, 603 (6th Cir. 2002) ("[S]ome adverse actions are so de minimis that they do not give rise to constitutionally cognizable injuries.").

To prove the second element, retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)). Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. See McCollum v. Cal. Dep't of Corr. and Rehab., 647 F.3d 870, 882–83 (9th Cir. 2011); accord Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the

1    protected conduct; and (3) other evidence showing that defendant's reasons for the challenged

2    action were false or pretextual.  McCollum, 647 F.3d at 882 (quoting Allen v. Iranon, 283 F.3d

3    1070, 1077 (9th Cir. 2002)).

4         The third element includes prisoners' First Amendment right of access to the courts.

5    Lewis v. Casey, 518 U.S. 343, 346 (1996).  While prisoners have no freestanding right to a prison

6    grievance process, see Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's

7    fundamental right of access to the courts hinges on his ability to access the prison grievance

8    system," Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), overruled on other grounds by

9    Shaw v. Murphy, 532 U.S. 223, 230 n. 2 (2001).  Because filing administrative grievances and

10   initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate

11   against prisoners for engaging in these activities.  Rhodes, 408 F.3d at 567.

12        Under the fourth element, plaintiff need not demonstrate a "total chilling of his First

13   Amendment rights," only that defendant's challenged conduct "would chill or silence a person of

14   ordinary firmness from future First Amendment activities."  Id. at 568–69 (citation and internal

15   quotation marks omitted).  Moreover, direct and tangible harm will support a retaliation claim

16   even without demonstration of a chilling effect on the further exercise of a prisoner's First

17   Amendment rights.  Id. at 568 n. 11.  "[A] plaintiff who fails to allege a chilling effect may still

18   state a claim if he alleges he suffered some other harm" as a retaliatory adverse action.

19   Brodheim, 584 F.3d at 1269 (citing Rhodes, 408 F.3d at 568 n. 11).

20        Regarding the fifth element, the Ninth Circuit has held that preserving institutional order,

21   discipline, and security are legitimate penological goals that, if they provide the motivation for an

22   official act taken, will defeat a claim of retaliation.  Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.

23   1994); Rizzo, 778 F.2d at 532.  When considering this final factor, courts should "'afford

24   appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate

25   penological reasons for conduct alleged to be retaliatory."  Pratt, 65 F.3d at 807 (quoting Sandin

26   v. Conner, 515 U.S. 472, 482 (1995)).  Plaintiff bears the burden of pleading and proving the

27   absence of legitimate correctional goals for defendant's challenged conduct.  Pratt, 65 F.3d at 806.

28   ////

1

**D.  First Amendment Mail Claim**

2          Generally, prisoners have "a First Amendment right to send and receive mail."  Witherow

3   v. Paff, 52 F.3d 264, 265 (9th Cir. 1995).  However, there is a "delicate balance" between

4   prisoners' First Amendment rights and the discretion given to prison administrators to govern the

5   order and security of the prison.  Thornburgh v. Abbott, 490 U.S. 401, 407-08 (1989).  A prison

6   may adopt regulations or practices for incoming mail which impinge on a prisoner's First

7   Amendment rights as long as the regulations are "reasonably related to legitimate penological

8   interests."  Turner v. Safley, 482 U.S. 78, 89 (1987).  The Turner standard applies to regulations

9   and practices concerning all correspondence between prisoners and to regulations concerning

10   incoming mail received by prisoners from non-prisoners.  Thornburgh, 490 U.S. at 413.

11          Nonetheless, isolated incidents of mail interference or tampering will not support a claim

12   under section 1983 for violation of plaintiff's constitutional rights.  See Davis v. Goord, 320 F.3d

13   346, 351 (2d Cir. 2003); Gardner v. Howard, 109 F.3d 427, 431 (8th Cir. 1997); Smith v.

14   Maschner, 899 F.2d 940, 944 (10th Cir. 1990).  See also Crofton v. Roe, 170 F.3d 957, 961 (9th

15   Cir. 1999) (temporary delay or isolated incident of delay of mail does not violate a prisoner's First

16   Amendment rights).

17          With respect to outgoing legal mail, prisoners have a constitutional right of access to the

18   courts.  See Lewis, 518 U.S. at 346; Bounds v. Smith, 430 U.S. 817, 821 (1977).  The right,

19   however, "guarantees no particular methodology but rather the conferral of a capability—the

20   capability of bringing contemplated challenges to sentences or conditions of confinement before

21   the courts."  Lewis, 518 U.S. at 356–57.  In order to state a denial of access claim under the First

22   Amendment, a prisoner must allege that he suffered an "actual injury" as a result of the

23   defendants' alleged actions, by explaining how the challenged official acts or omissions hindered

24   plaintiff's efforts to pursue a nonfrivolous legal claim.  Lewis, 518 U.S. at 351–55.  Actual injury

25   may be shown if the alleged shortcomings "hindered his efforts to pursue a legal claim," such as

26   having his complaint dismissed "for failure to satisfy some technical requirement," or if he

27   "suffered arguably actionable harm that he wished to bring before the courts."  Id. at 351.

28   ////

9

1    The right of access to the courts applies to nonfrivolous direct criminal appeals, habeas

2    corpus proceedings, and section 1983 actions.  Id. at 353 n.3, 354–55.  Where a prisoner asserts a

3    backward-looking denial of access claim—one seeking a remedy for a lost opportunity to present

4    a legal claim—he must show the loss of a "nonfrivolous" or "arguable" underlying claim, "the

5    official acts frustrating the litigation," and "a remedy that may be awarded as recompense but not

6    otherwise available in some suit that may yet be brought."  Christopher v. Harbury, 536 U.S. 403,

7    415, 417 (2002).

8    ### REQUEST FOR APPOINTMENT OF COUNSEL

9    In his complaint, plaintiff requests the appointment of counsel.  The United States

10    Supreme Court has ruled that district courts lack authority to require counsel to represent indigent

11    prisoners in § 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  In

12    certain exceptional circumstances, the district court may request the voluntary assistance of

13    counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir.

14    1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).

15    The test for exceptional circumstances requires the court to evaluate the plaintiff's

16    likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in

17    light of the complexity of the legal issues involved.  See Wilborn v. Escalderon, 789 F.2d 1328,

18    1331 (9th Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983).  Circumstances

19    common to most prisoners, such as lack of legal education and limited law library access, do not

20    establish exceptional circumstances that would warrant a request for voluntary assistance of

21    counsel.  Plaintiff simply requests appointment of counsel without attempting to make a showing

22    of exceptional circumstances.  The court does not independently find the required exceptional

23    circumstances.

24    ### MOTION FOR MENTAL AND PHYSICAL EXAMINATION

25    Plaintiff seeks an order from the court requiring that he be given a mental and physical

26    examination by an "independent agency."  (ECF No. 5.)  Plaintiff also complains here about his

27    lack of pain medication, and lists a number of "claims," including claims for interference with his

28    mail and retaliation.  Plaintiff is advised that he will be permitted to file an amended complaint, as

10

1   described above.  In that amended complaint, he must include any allegations regarding his legal

2   claims.  The court may not look to other filings to make plaintiff's amended complaint complete.

3   See E.D. Cal. R. 220.  It appears, then, that the purpose of plaintiff's motion is an injunction

4   requiring the prison to order certain medical treatment.

5         A party requesting preliminary injunctive relief must show that "he is likely to succeed on

6   the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

7   balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v.

8   Natural Res. Def. Council, 555 U.S. 7, 20 (2008).  The propriety of a request for injunctive relief

9   hinges on a significant threat of irreparable injury that must be imminent in nature.  Caribbean

10  Marine Serv. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988).

11        Plaintiff may not seek preliminary injunctive relief until the court finds that his complaint

12  presents cognizable claims.  See Zepeda v. United States Immigration Serv., 753 F.2d 719, 727

13  (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the

14  parties and subject matter jurisdiction over the claim; [however] it may not attempt to determine

15  the rights of persons not before the court.").  As explained above, plaintiff's complaint will be

16  dismissed with leave granted to file an amended complaint. Thus, plaintiff has not demonstrated

17  that he is likely to prevail on the merits of his claims.  Moreover, the court has not authorized

18  service of the complaint upon any of the named defendants.  Accordingly, plaintiff's motion for a

19  preliminary injunction should be denied as premature.

20                          **MOTION TO REVIEW DOCUMENTS**

21        Finally, plaintiff moves the court to review 75 pages of documents which he contends

22  relate to the claims in his complaint.  (ECF No. 8.)  The court also notes that on September 29,

23  2016 plaintiff filed a letter regarding claims in his complaint and on October 5, 2016 he filed an

24  "update" to his complaint.  As stated above, plaintiff will be given the opportunity to file an

25  amended complaint.  All support for his claims must be contained in that amended complaint.

26  However, plaintiff is also warned that his amended complaint must contain a short, plain

27  statement of each claim which identifies each defendant's actions and explains why they resulted

28  ////

                                       11

in a constitutional violation.  Because plaintiff will be given an opportunity to amend his

complaint, his motion for the court to review documents will be denied.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff

is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. §

1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the

Director of the California Department of Corrections and Rehabilitation filed concurrently

herewith.

3. Plaintiff's complaint is dismissed.

4. Plaintiff is granted thirty days from the date of service of this order to file an amended

complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil

Procedure, and the Local Rules of Practice.  The amended complaint must bear the docket

number assigned this case and must be labeled "First Amended Complaint."  Plaintiff must file an

original and two copies of the amended complaint.  Failure to file an amended complaint in

accordance with this order may result in a recommendation that this action be dismissed.

5. The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint

form used in this district.

6. Plaintiff's request for the appointment of counsel is denied.

7. Plaintiff's motion to review documents (ECF No. 8) is denied.

8. Because plaintiff has not filed the form indicating his consent to the jurisdiction of a

magistrate judge, the Clerk of the Court shall assign a district judge to this case.

Further, IT IS HEREBY RECOMMENDED that plaintiff's Motion to Order Physical and

Mental Exam (ECF No. 5) be denied.

These findings and recommendations will be submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

after being served with these findings and recommendations, plaintiff may file written objections

with the court.  The document should be captioned "Objections to Magistrate Judge's Findings

1  and Recommendations."  Petitioner is advised that failure to file objections within the specified

2  time may result in waiver of the right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951

3  F.2d 1153 (9th Cir. 1991).

4  Dated:  February 21, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/Kabe1765.14new

13